**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James W. WILLIAMS, Defendant-Appellant.**

Nos. 26829, 26830.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1971.

Rehearing Denied Nov. 4, 1971.

J. Edwin Smith, Houston, Tex., for defendant-appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., Malcolm R. Dimmitt, Asst. U. S. Atty., Houston, Tex., Will Wilson, Asst. Atty. Gen., Roger A. Pauley, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM, and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

█ This case raises an important question concerning the admissibility of expert witness testimony in criminal prosecutions. Because of the importance of the issue, we have placed this appeal en banc pursuant to Rule 35 of the Federal Rules of Appellate Procedure.

James W. Williams, formerly Chairman of the Board of Westec Corporation, was convicted of conspiracy to violate 15 U.S.C. §§ 77e(a), 78ff(a) and 18 U.S.C. §§ 1001, 1341, and also of twelve substantive violations of the mail fraud statute, 18 U.S.C. § 1341, after a jury trial in the United States District Court for the Southern District of Texas.[1] These criminal charges against Williams grew out of the financial collapse of Westec Corporation.[2]

The indictment against Williams alleged, in part, that he had caused Westec to sell oil and gas properties to corporations controlled by conspirators at prices greater than their fair market value. In support of these allegations, the Government called the witness Thomas Jeffrey to testify as an expert concerning the value of the properties involved.

Williams objected to the admission of Jeffrey's testimony because it was based upon an investigation of documents and business records not themselves introduced in evidence. On appeal, a panel of this court accepted this argument and reversed the conviction, holding that "Williams was denied his constitutional right to confront and cross-examine the witnesses who prepared and were the custodians of the records on which Jeffrey relied". United States v. Williams, 5 Cir., 1970, 424 F.2d 344.[3] Subsequently, the Government filed a timely petition for rehearing and a suggestion for rehearing en banc. The panel denied the petition for rehearing with a per curiam opinion which further elaborated the basis for its ruling. United States v. Williams, 5 Cir., 1970, 431 F.2d 1168. On the same date, the full Court granted the Government's petition for rehearing en banc on briefs without oral argument (431 F.2d 1175). We hold that the original panel of this court erred in reversing the conviction. The decision of the panel is overruled and the decision of the District Court is in all respects affirmed.

██ The admission of expert witness testimony based upon records not themselves introduced in evidence potentially raises questions with respect both to the constitutional right of confrontation and to the appropriate federal hearsay rule. Prior to the recent Supreme Court opinion in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), it was thought by

1. Williams was sentenced to a total of ten years' imprisonment, five years for the conspiracy, and consecutive five-year terms on the substantive counts, to run concurrently with each other. Subsequently, Williams was tried and convicted of a separate charge of conspiracy to unlawfully manipulate the price of Westec's common stock, in violation of 15 U.S.C. §§ 78i(a) (1) and (2). For this conviction, Williams was sentenced to an additional five years' imprisonment to run consecutively to the sentences imposed for the mail fraud violations.

2. Westec's stock was suspended from trading on the American Stock Exchange on August 26, 1966. Shortly thereafter, the United States Securities and Exchange Commission began an investigation of Westec's affairs. On September 27, 1966, the United States District Court for the Southern District of Texas entered an order placing the corporation in reorganization proceedings.

3. The original panel of this court properly affirmed the District Court with respect to the other arguments made by Williams on appeal. This en banc rehearing is confined solely to the issue of the admissibility of Jeffrey's testimony.

some commentators that the Sixth Amendment confrontation clause served to constitutionalize the common law hearsay rule; that the protection afforded by the confrontation clause was identical to that afforded by the hearsay rule and subject to the same exceptions.[4] *Green*, however, clarified the relationship between these two guarantees, making it clear that the right of confrontation and the rule against hearsay present two distinct, albeit related questions. Mr. Justice White, writing for the court, noted that:

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence * * *
>
> 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489, 495.

In terms of the reliability of evidence, the confrontation clause merely establishes a constitutional minimum as to the character of criminal proceedings.[5] Evidence may be consitutionally admissible under the confrontation clause and still run afoul of the appropriate federal hearsay rule.[6]

Hence, while the original panel of this court based its decision principally upon the confrontation clause, we find it necessary to consider separately whether Jeffrey's testimony violated the confrontation clause or the hearsay rule. First, however, we shall describe in greater detail the testimony of the expert witness Jeffrey.

### I. *Jeffrey's Testimony*

The testimony of Jeffrey concerned the value of two producing oil and gas properties known as the Irving properties and the Wilcrof properties. Jeffrey was an independent consulting petroleum engineer. In his testimony Jeffrey described his professional background and then explained the procedures employed in appraising the value of oil and gas properties. This testimony is quoted at length in the panel's per curiam opinion overruling the petitions for rehearing and will not be reproduced here.

Jeffrey testified that, on the basis of the appraisal procedures which he had described, he estimated the value of the Irving property to have been slightly less than $500,000 and the value of the Wilcrof property to have been approximately $44,469. In reaching these estimates, Jeffrey made a personal inspection of the properties and consulted the following sources of information: (a) the past production performance of the leases obtained from reports which are filed by the operators of the leases with the State, (b) core analyses data and well records obtained frm the records of the two companies, (c) data as to the price of oil and gas obtained from pipe-

---

4. See *e. g.* V Wigmore on Evidence § 1397 (3d ed. 1940).

   Speculation as to the constitutional status of the hearsay rule was fueled by the Supreme Court's decision in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), in which the court read into the Fourteenth Amendment the confrontation clause of the Sixth Amendment, while making no attempt to distinguish that clause from the rule against hearsay. See *generally*, Note, Confrontation and the Hearsay Rule, 75 Yale L.J. 1434 (1966); Comment, Federal Confrontation: A Not Very Clear Say on Hearsay, 13 U.C.L.A.L.Rev. 366 (1966).

5. The confrontation clause serves other interests in addition to the assurance of evidentiary reliability. It also, for example, protects the right to be present at trial when incriminating evidence is introduced and the right to have the trier of fact observe the demeanor of witnesses. See, The Supreme Court, 1969 Term, 84 Harv. L.Rev. 108–17 (1970).

6. In *Green*, the court observed that "merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied". 399 U.S. at 156, 90 S.Ct. at 1934, 26 L.Ed. 2d at 495–496.

line run statements in the records of the two companies, and (d) data as to operating costs for the year 1966 from the billing records from the operators of the leases.

Williams repeatedly objected to the admission of this expert testimony because the records of the two corporations upon which Jeffrey based his opinion were not themselves offered in evidence. The district judge overruled these objections and permitted Jeffrey to give his opinions as to the value of the properties. At the end of the direct examination, the Government offered into evidence the two appraisal reports, marked Government Exhibit X4 and X5, which Jeffrey had prepared. Defense counsel objected that the exhibits were hearsay and the court upheld the objection excluding the reports. Jeffrey was then cross-examined at length by the defense. During cross-examination, numerous factors which might reduce the weight of Jeffrey's expert opinion were developed, including the sources of information upon which he had relied.

## II. *The Confrontation Clause*

█ The first question before the court is whether the admission of Jeffrey's expert witness testimony violated Williams' Sixth Amendment right of confrontation. In its per curiam opinion denying the motion for rehearing, the original panel of this court relied on California v. Green, supra, to support its decision that the admission of Jeffrey's testimony violated the confrontation clause. This reliance by the panel on *Green* was misconceived. Indeed, Green makes it clear that there is no Sixth Amendment obstacle to the admission of Jeffrey's testimony.

In *Green*, the Supreme Court held that the admission of the prior inconsistent statement of a witness as substantive evidence in a criminal case did not violate the confrontation rights of the accused so long as the witness was present at trial and available for cross-examina-

tion. The relevance of *Green* to the case at bar is that it represents the most recent effort by the Court to elaborate the nature of the right of confrontation. In its opinion, the Court observed that:

> Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of the trial that forms the core of the values furthered by the Confrontation Clause * * *

399 U.S. at 157, 90 S.Ct. at 1934, 26 L.Ed.2d at 496.

In support of this statement, the Court quoted with approval from Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895):

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. * * *

*Green*, then, makes it clear that the confrontation guarantee focuses upon "the right of the accused to confront and probe each of his accusers—a narrow adversary activity".[7]

Given this view of the confrontation clause, it is evident that the admission of Jeffrey's testimony did not violate that guarantee. Jeffrey was personally available for cross-examination by the appellant. There was ample opportunity for the defense to probe the authenticity and accuracy of the sources relied upon by Jeffrey and the reasoning processes by which he arrived at his valuation. In

---

7. The Supreme Court, 1969 Term, 84 Harv.L.Rev. 108, 112 (1970).

light of the reasoning in *Green,* we conclude that Jeffrey's presence at the trial and his availability for cross-examination satisfied the constitutional right of confrontation regardless of whether his testimony fell within one of the traditional exceptions to the hearsay rule. Had the Government attempted to introduce the appraisal reports in evidence without calling the expert who had prepared them and offering an opportunity for cross-examination, then Williams' right of confrontation would have been infringed, but this is not the case at bar.

Indeed, the intensity of the cross-examination which the witness Jeffery actually received suggests that Williams' right of confrontation was fully protected. Counsel for the defense elicited from Jeffrey several statements that could be viewed as reducing the weight of his testimony. For example, Jeffrey acknowledged that he could not be absolutely certain that the records he examined were correct. He further testified that he had not himself surveyed the land and that he could not be sure that the surveys which he examined were correct. Jeffrey testified that he had done what is customary in his profession with regard to verifying and accepting the various reports of the two companies which he had used in his valuation of the properties.

### III. *The Federal Hearsay Rule*

Having established that there is no constitutional impediment to the introduction of Jeffrey's testimony, there still remains the question of whether the expert testimony violated the applicable federal hearsay rule. We conclude that it did not.

■■ Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony. It has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources. United States v. Al-

ker, 3 Cir., 1958, 260 F.2d 135; Birdsell v. United States, 5 Cir., 1965, 346 F.2d 775, 779–780, cert. den. 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366; Brown v. United States, 1966, 126 U.S.App.D.C. 134, 375 F.2d 310, 318; H & H Supply Co. v. United States, 10 Cir., 1952, 194 F.2d 553. The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion.[8] Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.

■ This rule of law was most recently stated in the Fifth Circuit in Birdsell v. United States, supra. This was a criminal prosecution in which the state offered the testimony of a psychiatrist which was based upon a personal interview with the patient and upon a study of hospital records and psychological tests performed by other physicians. The defense argued that the testimony was inadmissible because the records on which the testimony was based were inadmissible under the Business Records Act, 28 U.S.C. § 1732. The Fifth Circuit rejected this argument, holding that:

> \* \* \* there is abundant authority that an expert witness who is available for cross-examination at the trial may use such records as the basis for an opinion without the proponent having to call every person who made a recorded observation.

8. Cf., C. McCormick, Handbook of the Law of Evidence § 15 (1954); Rheingold, The Basis of Medical Testimony, 15 Vand. L.Rev. 473, 489 (1962).

346 F.2d at 779.

This case firmly established the principle, which we reiterate here today, that an expert's testimony need not be based solely upon records which are themselves introduced in evidence so long as the sources of information are of a type reasonably relied on by experts in forming opinions or inferences upon the subject.

In H & H Supply Co. v. United States, supra, the Tenth Circuit permitted the admission of expert witness testimony on facts that are strikingly similar to the case at bar. This was a condemnation case involving the value of certain oil leases. The Government called two professional petroleum engineers to give their expert opinion as to the value of the oil leases. Like Jeffrey in the case at bar, these petroleum engineers consulted hearsay sources in formulating their opinions. These included not only an examination of the claimant's books and records but also an on-the-scene examination of the property, a geological study of the land in question and of nearby land, conversations with employees of the claimant, an examination of records of the Osage Indian Agency, examination of records of companies owning adjacent oil leases, etc. Over objections that the testimony was hearsay, the court admitted the evidence, observing:

> The testimony of [the petroleum engineers] with respect to the sources of their information was not offered for the purpose of establishing the truth of the information received by them. They were testifying as valuation experts and the sole purpose of this testimony was to establish the sources upon which they relied in reaching their conclusions as to value. * * *

194 F.2d 553, 555.

■ Appellant asserts that this case and other civil cases are inapposite because this is a criminal prosecution. This argument is mistaken. While it is true that the confrontation clause has applicability only in criminal cases, the same cannot be said for the hearsay rule. The rule against hearsay has as its purpose the assurance of evidentiary reliability. This purpose is equally served in civil as well as criminal cases. We know of no authority for the general proposition that a more stringent hearsay rule must be applied in criminal than in civil cases. The Constitution protects the defendant in criminal prosecutions through the confrontation clause and the presumption of innocence. These are in no way undermined by applying the same hearsay standards in criminal as in civil cases.

■ The federal hearsay rule to which we adhere in this case is the same as that adopted in the Proposed Rules of Evidence for the United States District Courts and Magistrates (1969) by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States. 46 F.R.D. 161, at p. 315. The proposed rules provide as follows:

> *Rule 7-03   Opinion Testimony by Experts.*
>
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied on by experts in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Advisory Committee's Notes state that this rule contemplates the "presentation of data to the expert outside of court". The proposed rules are drafted to apply equally in criminal as well as civil cases.[9]

■ Applying these principles to the case at bar, we can only conclude that the trial judge properly admitted Jeffrey's testimony. Jeffrey's credentials as an expert were never assailed. Nowhere has it been argued that the records consulted by Jeffrey were other than of

---

9. For a useful discussion of proposed Rule 7-03, see Green, Highlights of the Proposed Federal Rules of Evidence, 4 Ga.L. Rev. 1, 33-34 (1969).

the type customarily relied on by experts in valuing oil properties. Jeffrey so testified and this testimony was never challenged.

■ Appellant argues that Jeffrey was not a true expert witness, but rather was a "summary" witness who merely summarized the contents of the records of the corporations. Appellant contends that the testimony of a summary witness is admissible only if the original records which the witness is summarizing are themselves introduced in evidence. Cf. McDaniel v. United States, 5 Cir. 1965, 343 F.2d 785; Greenhill v. United States, 5 Cir., 1962, 298 F.2d 405.

However, we need not reach the question of whether a summary witness must first introduce the records on which he bases his testimony because it is clear that Jeffrey was not such a summary witness. A reading of Jeffrey's testimony indicates that it involved far more than a mere summation of the records of the two corporations. Jeffrey testified that his initial step in appraising the two properties was the gathering of all available information. He inspected the properties and the equipment, and talked to the operating personnel of the leases. He obtained and examined electrical logs, core analyses and well records of the two corporations. He acquired the past production performance of the various leases from State reports. Billing records from the operators of the leases were examined to determine production costs. Oil and gas prices were established from pipeline run statements.

Having consulted all of these variegated sources, Jeffrey then applied the concepts derived from his professional experience to reach an opinion as to value. He projected the future gross income of the leases using estimated rates of production and the selling price of oil and gas, and then adjusted this figure to net income by deducting estimated expenses, taxes, and capital expenditures. The estimated future net income was then discounted to ascertain its present value. Following customary practice, Jeffrey then selected an "arbitrary" fraction of the present value of the future net income as representing the fair market value of the leases. Jeffrey testified that this arbitrary fraction was based upon the needs and financial position of the purchaser. The application of these concepts to produce an expert opinion as to value involved far more than the mere recapitulation of the contents of records. On the contrary, Jeffrey consulted many sources, and then formed an independent judgment which reflected his skill and knowledge as an expert.

Were we to accept the evidentiary rule advanced by the appellant and accepted by the original panel of this court, we would create a serious barrier to the use of expert testimony in the federal courts. The same logic which would bar Jeffrey from consulting the core analyses, electric logs and well records of the two companies would equally bar a physician from relying upon lab reports and the like unless the technician who conducted the test was also produced. Similarly, a real estate expert would be barred from testifying as to the value of real property unless he proved in court the transactions on which he based his expert judgment. We think that such an evidentiary rule would be unwise. As previously noted, the modern trend, as reflected in the Proposed Rules of Evidence for the district courts is towards eliminating such restrictions on expert testimony.

For the foregoing reasons, we reverse the decision of the panel of this court on the issue of the admissibility of Jeffrey's testimony. The judgment of the district court is in all respects affirmed.

Affirmed.

RIVES, Circuit Judge, dissenting, with whom, Circuit Judges GOLDBERG and GODBOLD join:

I respectfully dissent for the reasons expressed in the panel's original opinion reported in 424 F.2d 344, and its opinion denying the petitions for rehearing, reported in 431 F.2d 1168.