## State of Connecticut *v.* Peter D. Burns

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued May 5—decision released July 26, 1977

*Jerrold H. Barnett,* public defender, with whom were *Richard Emanuel,* assistant public defender, and, on the brief, *Anthony V. DeMayo,* public defender, for the appellant (defendant).

*Ernest J. Dietle, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Edward J. Mullarkey,* assistant state's attorney, for the appellee (state).

SPEZIALE, J. Upon a trial to a jury, the defendant, Peter D. Burns, was found guilty as charged of the crimes of attempted rape in the first degree, in violation of General Statutes §§ 53a-49 and 53a-72, and burglary in the third degree, in violation of General Statutes § 53a-103; he was also found guilty of the lesser included crime of sexual contact in the third degree, in violation of General Statutes § 53a-80, having been charged with the crime of deviate sexual intercourse in the first degree, in violation of General Statutes § 53a-75. Judgment was rendered on the verdict, and the defendant has appealed.

The defendant bases his appeal from this judgment on three claims of error: (1) that the trial court erred in ruling that a "box voir dire"[1] of prospective jurors be conducted; (2) that there was error in the admission of expert testimony concerning physical evidence which the state was unable to produce and which the defendant had not had an opportunity to test independently; and (3) that there was error in the court's rulings on the allowance of extrinsic evidence regarding the defendant's credibility.

---

[1] The defendant's trial counsel objected to the court's "customary procedure" of calling the prospective jurors in groups of twelve or more, putting them into the jury box, and having counsel address questions either to the group or to individual jurors.

From the evidence presented at trial, the jury could reasonably have found the following facts: A group of pleasure boats sailed from Long Island for a weekend cruise on July 4, 1974. The victim and her family were on the cruise as guests on Marilyn McKessey's boat. The boats arrived in Branford late on the afternoon of July 4, and docked at Bruce and Johnson's Marina. The McKessey family and their guests slept on the boat that evening and awoke at 4 or 4:15 a.m. on the morning of July 5 in order to get an early start. The victim, wearing shorts over her pajamas, walked to the women's room at the marina, followed a moment later by her mother and Mrs. McKessey. While they were in the room, one of the women heard a car pull up outside. The victim left the women's room alone and the other two women left a few minutes later. When Mrs. McKessey and the victim's mother returned to the boat and discovered that the victim was not there, they and others began searching the area for her.

Upon leaving the washroom, the victim had been approached by a man, identified as the defendant, Peter Burns, who asked for help in carrying a lobster pot. As they began walking, he pulled her beside a car. She tried to run, but he pulled her down, causing her to cut her knee on the ground. He forcibly detained her and threatened to kill her unless she cooperated with his demands. He then pushed her into the car, and drove to an area where there were boats in drydock. He took her onto a boat, made her disrobe, and forced her to participate in certain sexual acts. Then he drove her back to the dock area, and she got out of the car and returned to her family. Several of the searchers ran after the car, and the victim's father managed

to reach in through the passenger side window and grab Burns' arm before he accelerated, throwing the victim's father away from the car.

The victim was taken to the hospital, where she was examined and treated. An internal examination revealed no physical evidence of a forcible rape. But a pierced earring was lodged in the upper part of one of her ears, and she had a cut on her nose and a knee abrasion.

I

The defendant's first claim of error is that the court's use of the "box voir dire" method of jury selection violated his "right to question each juror individually by counsel," as guaranteed by article first, § 19, of the Connecticut constitution.[2]

In *Childs* v. *Blesso,* 158 Conn. 389, 260 A.2d 582, this court found no abuse of discretion in the use of a "box voir dire" where there was an opportunity to question privately those prospective jurors who expressed their reluctance to respond to questions in the presence of others. The *Childs* court determined that the applicable statute then in effect (General Statutes § 51-240),[3] which gave litigants

[2] "[Conn. Const. art. I, § 19] [TRIAL BY JURY. CHALLENGING OF JURORS] The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[3] "[General Statutes] Sec. 51-240. EXAMINATIONS OF JURORS AS TO QUALIFICATIONS. In any civil or criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror as to his qualifications to sit as a juror in such action, or as to his interest, if any, in the subject matter of such action, or as to his relations with the parties thereto; and, if the

the right to question each juror personally or by counsel, was not violated by the lower court, since the defendants were allowed to direct their questions to individual jurors.

There is no indication that the passage of the relevant part of the 1972 amendment to article first, § 19, was intended to accomplish anything more than to assure that the "right to question each juror individually by counsel" would be "inviolate."[4] Conn. Const. art. I, § 19. In a recent case dealing with voir dire generally, this court expressed its continuing approval of the rule stated in *Childs*, vesting the trial court with broad discretion in the examination of jurors. *State* v. *Anthony,* 172 Conn. 172, 174, 374 A.2d 156. The *Anthony* case was decided four years after the adoption of the constitutional amendment, and, by restating the *Childs*

judge before whom such examination is held is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judge from any further service upon the panel, or in such action, as such judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

[4] We note that the legislature has recently passed 1977 Public Acts, No. 77-255, effective October 1, 1977, which provides: "Section 51-240 of the general statutes is repealed and the following is substituted in lieu thereof: In any civil or criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror *outside the presence of other prospective jurors* as to his qualifications to sit as a juror in such action, or as to his interest, if any, in the subject matter of such action, or as to his relations with the parties thereto; and, if the judge before whom such examination is held is of the opinion from such examination that any juror would be unable to render a fair and impartial verdict, such juror shall be excused by the judge from any further service upon the panel, or in such action, as such judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

rule, we recognized that the constitutional guarantee is satisfied by the discretionary use of a "box voir dire."

In addition to the attack on constitutional grounds, the defendant contends that the trial court abused its discretion because, given the sensitive nature of the issues involved in this case, a "box voir dire" was particularly inappropriate. The grounds presented to the trial judge in support of the defendant's objection to the method of jury selection, however, were that it was contrary to the intent and wording of the constitutional provision and that prospective jurors might be influenced by the answers of others. As the defendant concedes in his brief, there was no effort made to alert the judge to potentially sensitive questions which might be raised, nor was there any request to question potential jurors privately on certain issues. "This court is not bound to consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim. Practice Book §§ 249, 652; *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821." *State* v. *Holmquist,* 173 Conn. 140, 146, 376 A.2d 111.

On the basis of prior rulings of this court, and the failure of the defendant to raise in his objection the inappropriateness of a "box voir dire" in this particular case, there has been no showing that the judge abused his discretion in permitting this method of jury selection.

## II

The defendant's second claim of error is that his right of confrontation and right to due process, guaranteed by the sixth, fifth and fourteenth amend-

ments to the United States constitution and article first, § 8, of the Connecticut constitution, were violated by the state's nonproduction of physical evidence and by the admission of government expert testimony concerning that evidence. The evidence involved consisted of articles of clothing belonging to both the defendant and the victim, as well as hair samples taken from the boat and from the defendant and the victim for comparison purposes. These items were obtained by the Branford police, sent by courier to the state laboratory, where they were analyzed by the chief state toxicologist, Abraham Stolman, and then returned to the Branford police. The evidence was left on a table in a locked office, and that was the last time anyone saw it. Although the police denied deliberately destroying or secreting the evidence, they were unable to account for its loss.

Stolman testified that he conducted microscopic examination of the hair samples, and both chemical and microscopic examination of the clothing. He stated that, based on comparisons of the hair samples submitted, the two hair samples obtained from the boat matched samples of the victim's pubic hair and the defendant's beard hair. He also testified that he found semen stains on the inside of the defendant's pants and on the inside of the victim's pajamas and shorts. On cross-examination, Stolman admitted that the fact that hairs match does not necessarily prove that they come from the same person. He stated that there was no way to determine whose semen was present on the inside of the articles of clothing; he did acknowledge, however, that a blood typing test could have determined whether all three stains came from one or more persons and whether the blood type of the stains

matched the blood type of any particular individual. No such tests were performed, however. The toxicological report was admitted as a full exhibit over the defendant's objection.

The defendant does not appear to contest the fact that the items tested by Stolman were the same as those obtained by the Branford police. Rather, the focus of the defendant's claim is on the state's failure to perform blood typing tests on the seminal stains and on the unavailability of the items for independent tests. It is significant in this regard that, although the loss of the evidence was not reported until shortly before the trial, at no time between the time of his arrest and the date of trial did the defendant either request that a blood typing test be performed or seek any independent toxicological tests.

The applicable case law does not support the defendant's contention that he was deprived of his right of confrontation. He had ample opportunity to cross-examine the witness, and it is this right which forms the core of the confrontation clause. *California* v. *Green,* 399 U.S. 149, 157, 90 S. Ct. 1930, 26 L. Ed. 2d 489; *United States* v. *Williams,* 447 F.2d 1285, 1289–90 (5th Cir.) (en banc). The overwhelming weight of authority is that, even where the state fails to produce the physical evidence which is the subject of the witness' testimony, the right of confrontation is satisfied by an opportunity for full cross-examination. *United States* v. *Herndon,* 536 F.2d 1027, 1029 (5th Cir.); *United States* v. *Sewar,* 468 F.2d 236, 238 (9th Cir.), cert. denied, 410 U.S. 916, 93 S. Ct. 972, 35 L. Ed. 2d 278; *United States* v. *Williams,* supra; *People* v. *Triplett,*

68 Mich. App. 531, 540, 243 N.W.2d 665; *People* v. *Eddington,* 53 Mich. App. 200, 205, 218 N.W.2d 831; see also *United States* v. *Augenblick,* 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537.

The defendant, acknowledging that his confrontation rights may have been satisfied by cross-examination of the state's expert, asserts that a claim of this nature, concerning the loss of evidence, may be more properly grounded in the due process clause of the fifth amendment. *United States* v. *Herndon,* supra. On the facts presented, however, the requirements of due process appear to have been met. There has been no showing that access to the lost evidence would have materially aided Burns' defense. This is buttressed by the fact that, up to the time of trial, when the loss was revealed, the defendant never requested access to the items in question, nor did he request that blood typing tests be performed. Further, since the defendant does not deny that the state's tests were actually performed on the missing items, contradictory results of independent testing would merely go to the weight accorded the testimony of Stolman. It is crucial to remember that the defendant admitted being on the boat and kissing and caressing the victim. He was convicted of attempted rape in the first degree (General Statutes §§ 53a-49, 53a-72) and sexual contact, third degree (General Statutes § 53a-80). Neither of these crimes requires proof that the parties ever disrobed or that intercourse actually occurred. Thus, even if the defendant had produced test results proving that the pubic hairs were not the victim's or that the semen stains did not correspond to Peter Burns' blood type, there is no indication that this would have strengthened Burns' defense.

The admission of expert testimony under these circumstances did not violate due process, nor did it deprive the defendant of his right of confrontation.

## III

The final claim on appeal is that the trial court erred in allowing the state to cross-examine the defendant on an arguably collateral matter and to impeach his testimony with extrinsic evidence, and that it erred still further in limiting his right to contradict.

The defendant was asked, during the course of the state's cross-examination, whether he had been involved in a "confrontation" or "disagreement" with anyone from the McKessey boat on the evening of July 4, 1974; he denied any knowledge of such an incident. He admitted that in July, 1974, while in the presence of Attorney Alan E. Silver, he did have a conversation with a Sergeant John Calvert at the Eighth Circuit Court, but denied telling Sergeant Calvert about a confrontation with a male member of the McKessey party.

The state was permitted to call Sergeant Calvert as a rebuttal witness; however, the court explicitly stated that the sergeant's testimony was being admitted for impeachment purposes only. The testimony was admissible on the question of whether Burns had ever told Sergeant Calvert about such an incident, but not on whether the incident actually took place.

On surrebuttal, the defendant was permitted to call Attorney Silver to testify regarding his recollections of the conversation between Burns and Sergeant Calvert. The defendant was also given

an opportunity to explain the apparent inconsistency. The court, however, refused to allow the defendant to introduce the testimony of a Mr. Young regarding the confrontation which actually occurred on the evening of July 4. This testimony was excluded not only because Young was in violation of the court's sequestration order, but, more significantly, because the testimony was not relevant to the question of whether Burns had ever made the alleged statement to Sergeant Calvert.

When a party has made a prior statement inconsistent with his testimony at trial, the statement may be received as an admission and treated as relevant evidence upon the fact issues. McCormick, Evidence (2d Ed.) § 37, p. 74; *Cicero* v. *E.B.K., Inc.,* 166 Conn. 490, 496, 352 A.2d 309. Such a statement may also be received as a prior inconsistent statement, and given the same status as a prior statement by a witness who is not a party; in such a case it can be used for impeachment purposes only. McCormick, supra; *Worden* v. *Francis,* 153 Conn. 578, 582, 219 A.2d 442. The trial court ruled that Burns' statement to Sergeant Calvert was being admitted into evidence *only* as a prior inconsistent statement; consequently, it could be used for impeachment but not as evidence of what actually occurred on the night of July 4, 1974.

Ordinarily, extrinsic evidence of prior inconsistent statements cannot be used to contradict testimony. This rule is strictly observed when the testimony relates to a collateral matter; extrinsic evidence may be admitted, however, where the subject matter of the testimony is relevant to the issues of the case. McCormick, supra, § 36, pp. 70-71. The trial court traditionally has wide discretion to deter-

mine what is relevant in a particular case. *State v. Villafane,* 171 Conn. 644, 671, 372 A.2d 82. Here, the judge was well within his discretion in deciding that Burns' conversation with Sergeant Calvert was sufficiently relevant to allow the introduction of extrinsic evidence. See *State* v. *Villafane,* supra.

Once extrinsic evidence was admitted, the defendant argues that the court erred in refusing to permit Young to testify. Yet, when asked during the trial what Young could say concerning Burns' conversation with Calvert, the response of defense counsel was: "Nothing." Because the judge had explicitly limited the issue to what was said by Burns at the Eighth Circuit Court, rather than to what had happened on July 4, Young's testimony, which would have been limited to the July 4 incident, was justifiably excluded.

There is no error.

In this opinion the other judges concurred.