STATE OF CONNECTICUT *v.* JOHN HARDEN

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued March 8—decision released June 27, 1978

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Joseph A. Hill,* assistant state's attorney, with whom, on the brief, were *Francis M. McDonald,* state's attorney, and *Bradford J. Ward,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted after trial to a jury of burglary in the second degree, in violation of General Statutes § 53a-102, and rape in the first degree, in violation of General Statutes

§ 53a-72.[1]  His motion to set aside the verdict was denied, and from the judgment rendered on that verdict he has appealed.

From the evidence, the jury could have found the following facts: At about 1 a.m. on August 9, 1974, the victim was alone in her Waterbury apartment when she was physically assaulted by the defendant, John Harden, who was hiding in her bathroom. After threatening to kill her, the defendant grasped the victim's throat and forced her to have sexual intercourse with him.  She scratched him on the hand during the course of this assault, and had a number of opportunities to view his face.  After having intercourse with the victim, Harden cleaned his body with a yellow tissue from the bathroom and then left the apartment.

The victim called the police at about 2:13 a.m. and, when they arrived, described her assailant as a muscular black male about 5 feet 3 inches tall, about 20 years old with a medium Afro haircut, and wearing a black tee shirt, dungarees and white sneakers.  The defendant was apprehended by Waterbury police at approximately 2:25 a.m. about three blocks away from the victim's apartment. He was breathless and fit the description given by the victim.  When apprehended, he had a slight laceration on his left hand.

Subsequently, Harden was taken to the police station, where the police removed from his pocket a yellow tissue containing two hairs.  The state's expert witnesses testified that one of the hairs

[1] Section 53a-72 was repealed in 1975.  Public Acts 1975, No. 75-619, § 7.  The present statutory classification of sex offenses simply provides for varying degrees of sexual assault.  See General Statutes §§ 53a-70—53a-73a.

exhibited the same characteristics as the victim's head hairs, and the yellow tissue had the same class characteristics as those found in the victim's apartment.

I

The initial assignment of error pursued by the defendant in his brief is that the court erred in its charge to the jury regarding identification testimony. Specifically, he claims that the court committed reversible error in refusing to instruct the jury as requested regarding the guidelines to be followed in assessing such testimony and the possible dangers of suggestion inherent in certain identification procedures.

After the defendant was apprehended, and prior to his arrival at the police station, he was returned to the street in front of the victim's apartment where she identified him as her assailant. At trial, she made an in-court identification of the defendant and was subjected to an extensive cross-examination regarding the factors upon which she based her identification of the defendant as her attacker. The trial court denied the defendant's pretrial motion to suppress identification evidence of the defendant at any subsequent courtroom identification, ruling that the state had established by clear and convincing evidence that the in-court identification arose from circumstances other than the confrontation on the street following the apprehension of the defendant by police. Although no pretrial ruling was made by the court regarding the admissibility of the out-of-court identification, the state did not offer any evidence of this earlier identification at trial. The defendant, however, elicited testimony regarding the out-of-court identification. The

defendant, in his appeal, does not challenge the propriety of the court's denial of his motion to suppress identification testimony;[2] rather, he directs his argument on this issue to the court's failure to charge as requested.

The court instructed the jury that they "must be satisfied beyond a reasonable doubt of the accuracy of this identification," and that "[i]f the circumstances of the identification are not convincing beyond a reasonable doubt, you must find this accused not guilty on both of these counts." It emphasized the heavy burden placed upon the state to prove that the defendant was "the very same person" who committed the crimes as charged, and cautioned that "the matter of identification of this accused as made by the complaining witness is of the utmost importance." The jury were further instructed to consider carefully the defendant's testimony, his alibi and denial, and all other evidence relating to the question of identification.

Although the defendant concedes that the charge as given "stress[ed] the importance of identification," he claims it was error for the court to refuse

[2] The standard established for determining whether an out-of-court identification procedure constitutes a due process violation is whether, under all the circumstances, the procedure was impermissibly or "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall* v. *Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; see *Neil* v. *Biggers*, 409 U.S. 188, 196, 93 S. Ct. 375, 34 L. Ed. 2d 401; *State* v. *Villafane*, 171 Conn. 644, 657, 372 A.2d 82. In *United States* v. *Wade*, 388 U.S. 218, 239–42, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, it was held that an in-court identification by a witness to whom the accused was exhibited before trial in the absence of counsel is admissible when it can be established by clear and convincing evidence that that evidence is based upon observations of the suspect other than the pretrial confrontation. See *State* v. *Oliver*, 160 Conn. 85, 90, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115.

his requests for an instruction on identification "complete with guidelines of the suggestive dangers of identification confrontations."[3] The dangers inherent in the area of identification testimony are well known and were examined in detail by the Supreme Court in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (pretrial lineup), and *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (photographic

[3] The following jury instructions were requested by the defendant:

"(15) Where the prosecution has offered identification testimony, i.e., the testimony of an eyewitness that he or she saw the defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. The witness' opportunity to observe the perpetrator during the commission of the act charged is of great importance in determining the credibility of his or her identification. The testimony of the witness that he or she is positive of his or her identification may be considered by you, but does not relieve you of the duty to carefully consider his or her identification testimony and to reject it if you find that it is not reliable. *Macklin* v. *United States,* 409 F.2d 174 (D.C. Cir. 1969), relying on *United States* v. *Wade,* 388 U.S. 218 (1967).

(16) An identification procedure is any confrontation between the defendant and a witness, arranged by the authorities before trial, for the purpose of obtaining an identification. Where evidence has been introduced that a witness, who had identified the defendant at trial, identified him on some occasion before trial, the circumstances of that identification procedure may be considered by you in determining the reliability of the witness' identification.

Dangers of suggestion, i.e., circumstances which draw attention to a particular person, exist in any identification procedure. The suggestion may be so great that the witness identified someone, before trial, who is not in fact the person who committed the act charged. It is a matter of common knowledge, however, that once a witness has identified someone prior to trial, he is not likely to change his testimony at the trial. In determining the credibility of the witness' identification, therefore, you may consider whether the identification procedure contained any elements of suggestion which would have a tendency in reason to affect the reliability of the identification. *Macklin* v. *United States,* 409 F.2d 174 (D.C. Cir. 1969), relying on *United States* v. *Wade,* 388 U.S. 218 (1967)."

display). As a result, a number of federal circuit courts have considered the need for a detailed charge on the fallibility of eyewitness identification. While some of those courts have decided that such a charge is to be used in the discretion of the court based upon the circumstances of a particular case; *Barber* v. *United States,* 412 F.2d 775 (5th Cir.); *Cullen* v. *United States,* 408 F.2d 1178 (8th Cir.); *McGee* v. *United States,* 402 F.2d 434 (10th Cir.), cert. denied, 394 U.S. 908, 89 S. Ct. 1020, 22 L. Ed. 2d 220; others, acting in their supervisory capacity over the district courts, have endorsed the use of a model jury instruction in applicable cases. See, e.g., *United States* v. *Holley,* 502 F.2d 273, 277–78 (4th Cir.); *United States* v. *Telfaire,* 469 F.2d 552, 558–59 (D.C. Cir.); *United States* v. *Barber,* 442 F.2d 517, 528 (3d Cir.). Nevertheless, even those courts which encourage the use of a specific charge would allow the trial court wide latitude to modify the model instruction contingent upon the circumstances surrounding a particular case. *United States* v. *Holley,* supra, 275; *United States* v. *Barber,* supra, 527–28.

Although it would be preferable for a court to charge the jury regarding the dangers of misidentification in an appropriate case, especially when such an instruction is requested, we note with approval the posture of the Second Circuit (Friendly, J.) on this question: "While a defendant is not entitled to a reading of all that was said about the dangers of misidentification in *United States* v. *Wade* [388 U.S. 218, 228–36, 87 S. Ct. 1926, 18 L. Ed. 2d 1149] and *Simmons* v. *United States* [390 U.S. 377, 383–84, 88 S. Ct. 967, 19 L. Ed. 2d 1247], we would think it reasonable that a properly drafted instruction, drawing particularly on Mr.

Justice Harlan's language in *Simmons,* should be given if requested. Whether failure to do so would constitute reversible error would depend upon the circumstances." *United States* v. *Fernandez,* 456 F.2d 638, 643–44 (2d Cir.); see also *United States* v. *Evans,* 484 F.2d 1178, 1187–89 (2d Cir.).

The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law. *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 645; *Szlinsky* v. *Denhup,* 156 Conn. 159, 163, 239 A.2d 505.

The factual circumstances in the present case contain none of the special difficulties often presented by identification testimony since the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. Here, the victim had sufficient time and adequate opportunity to observe her assailant; she gave a detailed description of the accused to the police within minutes after the incident; there was no photographic identification involved; and the victim gave a positive in-court identification of the defendant based on her observations of the assailant during the hour-long ordeal.

The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evi-

dence, and when its instructions are suited to their guidance in the determination of those issues. *State* v. *Bennett,* 172 Conn. 324, 329–32, 374 A.2d 247. The trial court's refusal to include, in this case, the defendant's request for a special identification instruction cannot be said to have prejudiced the defendant's defense in view of the factual circumstances related above as well as the fact that it was the defendant who introduced evidence of the out-of-court identification. See *Bansak* v. *Pawelczyk,* 173 Conn. 520, 523, 378 A.2d 569; *State* v. *Kinsey,* 173 Conn. 344, 349, 377 A.2d 1095.

## II

The defendant next claims error in the court's failure to charge that the defendant could be found guilty of the crime of sexual misconduct in the second degree as a lesser included offense of rape in the first degree.[4]

"The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime." *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547; *State* v. *Neve,* 174 Conn. 142,

---

[4] The defendant actually raises three claims of error in connection with this issue: (1) the court's failure to charge as requested on the "lesser included offense" as a matter of law, without regard to the fact that the defendant subsequently abandoned this request because of his failure to meet the requirements of Practice Book § 252; (2) the court's denial of his motion to set aside the verdict on the basis of its failure to charge on the "lesser included offense"; and (3) the court's failure to charge as a deprivation of the defendant's right to a fair trial. Our determination that the crime of sexual misconduct in the second degree is not a lesser included offense of rape in the first degree disposes of those claims.

145, 384 A.2d 332; *State* v. *Troynack,* 174 Conn. 89, 97, 384 A.2d 326; *State* v. *Ruiz,* 171 Conn. 264, 272, 368 A.2d 222.

Under the statute in effect at the time of trial, rape in the first degree required sexual intercourse with a female by forcible compulsion, with a female who was incapable of consent due to physical helplessness or with a female less than fourteen years of age. General Statutes § 53a-72. The state, however, alleged in its bill of particulars that the defendant engaged in sexual intercourse with the victim by forcible compulsion. Sexual misconduct in the second degree required, inter alia, sexual intercourse with a female without her consent. General Statutes § 53a-71 (a) (1). As defined by the applicable provision of § 53a-66 (a), however, lack of consent results from either forcible compulsion or incapacity to consent. In the present case, therefore, since the defendant was specifically accused of the crime of rape in the first degree by forcible compulsion, the facts necessary to establish a violation of either offense in the manner described (i.e., forcible compulsion) would be identical.[5]

As we have said, a lesser offense is an included crime if it is impossible to commit the greater offense in the manner described without *first* committing the lesser violation. *State* v. *Brown,* supra. Since the elements of rape charged in the present case are identical to the relevant provisions of sexual misconduct in the second degree; *People* v.

[5] The courts of New York have similarly reached this conclusion under a statutory scheme which is, in all relevant respects, identical to that which existed in this state at the time of the defendant's arrest and conviction. *People* v. *Vicaretti,* 54 App. Div. 2d 236, 388 N.Y.S.2d 410; *People* v. *Wells,* 48 App. Div. 2d 934, 369 N.Y.S.2d 538; *People* v. *Tucker,* 47 App. Div. 2d 583, 363 N.Y.S.2d 180.

*Wells,* 48 App. Div. 2d 934, 369 N.Y.S.2d 538; the defendant's commission of the greater offense would, in fact, likewise constitute a violation of the lesser offense. Under these circumstances, it was proper for the trial court not to give the jury an instruction that a verdict of guilty of sexual misconduct in the second degree was permissible.[6] *Sansone* v. *United States,* 380 U.S. 343, 349–50, 85 S. Ct. 1004, 13 L. Ed. 2d 882; *Berra* v. *United States,* 351 U.S. 131, 132–35, 76 S. Ct. 685, 100 L. Ed. 1013.

## III

The final claims of error advanced by the defendant involve the loss of certain evidence in the possession of the state. Shortly after he was apprehended, the defendant was taken to the police station where, pursuant to a search of his person, the police removed from the defendant's pocket a yellow tissue containing a long brown hair and a short black hair. These items, among others, were sent to the state laboratory where they were analyzed by the chief state toxicologist, Abraham Stolman, and then returned to the Waterbury police on January 10, 1975. On March 5, 1975, an envelope containing the tissue and hair was again sent to the state laboratory where Stolman removed only the long brown hair for reexamination and returned the envelope to the police courier who, on the same date, brought the tissue to James McDonald, the director of the crime lab for the New Haven police department, for his examination. At the time he removed

---

[6] As the United States Supreme Court pointed out in *Berra* v. *United States,* 351 U.S. 131, 135, 76 S. Ct. 685, 100 L. Ed. 1013, to give such an instruction would not have added any other factual issue for the determination of the jury; rather, it would effectively circumvent the limited function of the jury by providing them with the right to determine the punishment to be imposed upon a finding that the defendant had committed the criminal act as charged.

the long brown hair on March 5, Stolman did not notice whether the short black hair was still in the tissue. The short black hair, admittedly lost by the state, was not introduced into evidence, but Stolman's reports indicating the existence of that hair were introduced as an exhibit by the defendant.

Stolman testified that upon his initial examination of the hairs, neither the long brown hair nor the short black hair matched the pubic hairs of the victim. On reexamination of the brown hair, however, Stolman found that it exhibited the same characteristics as the victim's head hairs and thus concluded that it matched those of the victim. According to McDonald, the yellow tissue found on the defendant had the same class characteristics as tissue from a box in the victim's apartment and could have originated from that source.

In his brief, the defendant argues that the loss of the black hair resulted in substantial injustice to him, "thus violating his right to a fair trial and due process of law under the Fourteenth Amendment of the United States Constitution and Article I, Section 8, of the Connecticut Constitution." "A fair trial is implicit in the term 'due process of law.' . . . The requirements of due process are met in the trial of a person accused of crime if he has been given the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings in this state." *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct. 1010, 2 L. Ed. 2d 1075; *Lisenba* v. *California,* 314 U.S. 219, 62 S. Ct. 280, 86 L. Ed. 166; *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225. Whether the defendant, under the facts of the present case, has been deprived of his right depends upon the

materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, and the reasons for its nonavailability to the defense. *United States* v. *Herndon,* 536 F.2d 1027, 1029 (5th Cir.).

In a recent case involving a somewhat similar factual situation, we held that the defendant's due process rights were not violated by the loss of evidence in the possession of the state. *State* v. *Burns,* 173 Conn. 317, 325, 377 A.2d 1082. Here, as in *Burns,* there has been no showing that access to the lost evidence would have materially aided Harden's defense, nor is there any evidence that, prior to trial, the defendant requested access to this evidence in order to obtain independent test results. The results of tests done by the state on the black hair prior to its disappearance indicated that it did not belong to the victim. It was not tested in comparison with the hair of the defendant. Thus, even if the defendant had been able to obtain test results establishing that the short black hair, found in his own clothing, was not one of his pubic or head hairs, there is no indication that this would have strengthened his defense. Under these circumstances, the loss of the evidence did not violate due process.

Nor do the facts of this case require that sanctions be imposed upon the state since there was no suppression of evidence in its possession indicating bad faith on its part. See *United States* v. *Miranda,* 526 F.2d 1319, 1327 (2d Cir.), and cases cited. The trial court, therefore, did not err by allowing the long brown hair to be admitted into evidence without the admission of the missing black hair.

The defendant's final claim regarding the loss of the black hair is based upon the court's refusal to

charge the jury as requested that they should consider the state's failure to offer the hair "in connection with the weight and credibility to be attached to all of the evidence." This is not a case where the state failed to produce a witness who would naturally be produced and could reasonably be expected to have peculiar or superior information material to the case. See *Fontaine* v. *Coyle,* 174 Conn. 204, 384 A.2d 616; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598. Here, both Stolman and McDonald testified regarding their examinations of the short black hair and were, of course, subject to cross-examination by the defense. Moreover, it is not seriously disputed by the defendant that, under the circumstances, the state was unable to produce this evidence. See *People* v. *Brophy,* 122 Cal. App. 2d 638, 265 P.2d 593; 75 Am. Jur. 2d, Trial, § 767. Given the facts in the present case, the trial court did not err in refusing to instruct the jury as requested.

There is no error.

In this opinion the other judges concurred.