STATE OF CONNECTICUT *v.* ROBERTO MORALES
(11565)

FOTI, LAVERY and HEIMAN, Js.

Argued September 28—decision released December 7, 1993

*Temmy Ann Pieszak,* assistant public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *John Smriga,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[1] robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[2]

---

[1] General Statutes § 53a-70 provides in pertinent part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[2] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

and threatening in violation of General Statutes § 53a-62 (a) (1).[3] On appeal, the defendant asserts that (1) the trial court improperly denied his motion to dismiss for lack of a speedy trial, (2) he was deprived of his right to due process and a fair trial under the state constitution by the unavailability of exculpatory evidence, and (3) he was deprived of his right to due process by the prosecution's use of evidence from a previous plea bargain that was withdrawn. We affirm the judgment of the trial court.

The trial court could reasonably have found the following facts. On December 30, 1990, the victim was at the Pembroke Grill on Pembroke Street in Bridgeport. She left the grill at approximately 11:45 p.m., walked down Pembroke Street and turned left onto East Main Street. While on East Main Street, she heard someone following her. She stopped at a phone booth and was approached by the defendant. The defendant, who had a Spanish accent, asked if she was calling the police. She said no and pretended to call her boyfriend. A person in a tow truck then pulled up next to the phone booth. The victim asked the driver to give her a ride because she believed the defendant was going to hurt her, but he refused, stating that the defendant was his relative. The driver and the defendant then began to talk to each other. Meanwhile, the victim began to walk down Seymour Street toward Kossuth Street. On Sey-

---

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] General Statutes § 53a-62 provides in pertinent part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

mour Street, she again saw the defendant following her. She walked down Kossuth Street toward the thruway. When the victim reached an Interstate 95 underpass, the defendant grabbed her and punched her in the mouth. He then pulled out a knife, placed it at her neck and pulled her beneath the underpass and through a gate. The defendant pushed the victim down on her knees, told her not to move or say anything and to keep her head down or he would kill her. The defendant dropped the knife and told the victim to unbutton and unzip her pants. The defendant then pulled off her pants and underwear, got behind her and, while holding her around the neck, bit her "on [the] butt." The defendant then "put his thing in [her] butt." He bit her neck and jumped off of her while telling her to keep her head down or he would kill her, and he "wiped his penis off on [the victim's] jacket." The defendant then pulled off her necklaces and bracelet and walked away. The victim then walked down Stratford Avenue and stopped a car that she recognized as belonging to a friend. The friend drove the victim to the Bridgeport police station. The police called an ambulance that transported the victim to Park City Hospital for treatment. After treatment, she gave a statement to Detective Annie Osika about the incident and turned over her jacket to the police.

In the spring of 1991, while a passenger on a bus, the victim saw the defendant standing on the corner of Stratford Avenue and East Main Street. She stayed on the bus for a few stops, then disembarked and called the police. The police transported the victim back to where she had seen the defendant. She identified him as her attacker, and he was arrested on March 11, 1991.[4]

---

[4] Additional facts will be set forth where they are relevant to the issue raised.

# I

The defendant first asserts that the trial court improperly denied his motion to dismiss for lack of a speedy trial. We decline to afford review to this claim because it was not properly preserved before the trial court.

The following additional facts are necessary for a proper resolution of this issue. On November 20, 1991, the defendant filed a motion for a speedy trial pursuant to General Statutes § 54-82m (thirty day motion).[5] The trial court granted the motion on November 27, 1991. On December 17, 1991, the defendant entered an *Alford*[6] plea of guilty to a charge of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2).[7] The terms of the plea bargain included a provision that the agreement could be withdrawn if the defendant was known by an alias or had a criminal record. On January 17, 1992, the guilty plea was vacated because the defendant was found to have an alias, to have prior

---

[5] General Statutes § 54-82m provides in pertinent part: "(1) [I]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence . . . when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. . . ."

[6] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] General Statutes § 53a-135 provides in pertinent part: "(a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

convictions, and to be an escapee. His real name was Angel Penja. The case was then scheduled for trial no more than sixty days from that date. The defendant, acting pro se, filed a motion for a speedy trial on January 29, 1992, pursuant to General Statutes § 54-82c (120 day motion).[8] On April 20, 1992, the defendant filed a motion to dismiss for lack of a speedy trial. He argued, on the basis of the thirty day motion, that he was entitled to a jury trial within thirty days of the January 17, 1992 hearing that vacated the guilty plea. The defendant's only claim to the trial court was that the thirty day motion was still effective despite the intervening plea bargain and plea withdrawal. The trial court denied the motion.

On appeal, the defendant now asserts that "the crux of [his] claim is the trial court's order on January 17, 1992, that his trial begin within sixty days. This order was a reasonable attempt by the court to enforce the defendant's speedy trial rights after the court rejected the defendant's plea. The court's order that the defendant be tried within sixty days of the rejection of his plea takes the instant case out of the statutory and Practice Book framework for the speedy trial of criminal cases. Once that order issued the question in this case became not whether the defendant was *entitled* by statute or court rule to be tried within that period, but instead whether the deadline could be ignored with im[p]unity. The defendant respectfully submits that the order could not simply be ignored and thus when that order was not rescinded or modified prior to its expiration, the defendant was entitled either to the speedy

---

[8] General Statutes § 54-82c provides in pertinent part: "(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days . . . ."

trial ordered or to relief for the violation of that order.'' (Emphasis in original.) This is not the claim advanced before the trial court.

"This court will not review issues of law that are raised for the first time on appeal." *State* v. *Harvey,* 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." *Keating* v. *Glass Container Corporation,* 197 Conn. 428, 431, 497 A.2d 763 (1985); *Biggs* v. *Warden,* 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). A party must "advance his argument of [this issue] at trial in compliance with our rules. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Duntz,* 223 Conn. 207, 237, 613 A.2d 224 (1992). "Claims that were not distinctly raised at trial are not reviewable on appeal. . . . Accordingly, we decline to review [this claim]. We also note that [it does] not qualify for *Evans-Golding* review, nor [does it] rise to the level of plain error. Practice Book § 4185. . . .''[9] (Citations omitted.) *State* v. *Pickles,* 28 Conn. App. 283, 286–87, 610 A.2d 716 (1992).

---

[9] "Because the defendant did not establish that '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt'; *State* v. *Golding,* [213 Conn. 233, 239–40, 567 A.2d 823 (1989)]; *Evans-Golding* review would be improper." *State* v. *Pickles,* 28 Conn. App. 283, 287 n.4, 610 A.2d 716 (1992).

Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

## II

The defendant next asserts that he was deprived of his right to due process and a fair trial under the state constitution by the unavailability of exculpatory evidence. We are not persuaded.

The following additional facts are necessary for a proper resolution of this issue. The defendant, after assaulting the victim, "wiped his penis off on [her] jacket." The victim gave the jacket to the police after the incident. Upon the victim's request, the police returned the jacket to her prior to the defendant's arrest. On May 22, 1991, the trial court granted the defendant's motion for discovery and inspection of certain items. The motion requested the disclosure of "exculpatory information and materials." The jacket was unavailable at trial because the Bridgeport police had returned it to the victim prior to the defendant's arrest. The defendant claims that the failure by the Bridgeport police department to preserve the jacket violated his due process right, as guaranteed by article first, § 8, of the Connecticut constitution.[10]

The defendant claims that the test for determining whether the state violated his state due process right is to determine the reason for the unavailability of the evidence, the materiality of the evidence, the likelihood of mistaken interpretation [due to the absence of the evidence] by witnesses or the jury, and the prejudice to the defendant caused by the unavailability of the evidence. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Gonzalez*, 206 Conn. 213, 224–25, 537 A.2d 460 (1988). The United States Supreme Court has stated "that unless a criminal defendant can show bad faith on the part of the

---

[10] The defendant does not claim a due process violation under the United States constitution.

police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona* v. *Youngblood,* 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The effect of *Youngblood* on the state constitutional test to determine whether the defendant's state due process right has been violated has never been fully explored by the courts of this state. Prior to the *Youngblood* decision, our courts applied a four-prong test to determine whether a prosecution should be dismissed for failure to preserve potentially exculpatory evidence in violation of the due process clause. See *State* v. *Gonzalez,* supra. After the *Youngblood* decision, neither we nor our Supreme Court has ever confronted the issue of whether the due process clause of our state constitution comports with the *Youngblood* test. See *State* v. *Brosnan,* 24 Conn. App. 473, 589 A.2d 1234 (1991), reversed in part, 221 Conn. 788, 812, 608 A.2d 49 (1992) (the defendant failed to supply an analysis of the state due proces clause for lost evidence); *State* v. *Genotti,* 220 Conn. 796, 811, 601 A.2d 1013 (1992) ("the defendant's brief [was] void of a separate state constitutional analysis alleging a violation of his state due process rights"); *State* v. *Leroux,* 18 Conn. App. 223, 230, 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989) (court refused to determine if test under state constitution was different from federal test because defendant's claim failed under four-prong analysis). Further, the Connecticut Supreme Court and this court have applied the four-prong analysis, since the *Youngblood* decision, only to claims of due process violations arising from a denial of a motion to suppress inculpatory evidence presented by the state about lost or destroyed evidence. See *State* v. *Baldwin,* 224 Conn. 347, 363–66, 618 A.2d 513 (1993) (defendant never claimed that evidence was potentially exculpatory); *State* v. *Marra,* 222 Conn. 506, 514–17, 610 A.2d 1113 (1992)

(defendant claimed a violation of due process arising out of admission of testimony concerning lost evidence, not from destruction of evidence and *Youngblood* is not addressed); *State* v. *Grillo,* 23 Conn. App. 50, 57, 578 A.2d 677 (1990) (court applied four factor test set forth in *State* v. *Leroux,* supra, without mentioning *Youngblood* decision).

" '[T]he requirements of due process are met in the trial of a person accused of crime if he has been given the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings in this state.' . . . (Citation omitted.)" *State* v. *Baldwin,* supra, 363. "Our Supreme Court has repeatedly held that, as a general rule, 'the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations.' *State* v. *Brigandi,* 186 Conn. 521, 542, 442 A.2d 927 (1982); *Caldor's Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1977)." *State* v. *Leroux,* supra, 229–30; *State* v. *Cruz,* 212 Conn. 351, 364, 562 A.2d 1071 (1989). Following this principle, the Connecticut Supreme Court adopted the four-prong test, as stated in *State* v. *Gonzalez,* supra, from a test enunciated under the federal constitution. *State* v. *Harden,* 175 Conn. 315, 326–27, 398 A.2d 1169 (1978), citing *United States* v. *Herndon,* 536 F.2d 1027, 1029 (5th Cir. 1976). Similarly, we adopt the test stated in *Arizona* v. *Youngblood,* supra, as the test for determining whether the state violated the defendant's state due process right by failing to preserve potentially exculpatory evidence.[11] Therefore, "unless a criminal defendant can show bad faith on the part of the police,

[11] We limit this decision to allegations of due process violations arising out of a motion to dismiss the prosecution for failure by the state to preserve potentially exculpatory evidence. The four-prong test still applies to claims of due process violations arising out of a motion to suppress the admission of testimony about destroyed evidence. See *State* v. *Marra,* 222 Conn. 506, 516, 610 A.2d 1113 (1992).

failure to preserve potentially useful evidence does not constitute a denial of due process of law" under our state constitution.[12] Id.

" '[B]ad faith' connotes a deliberate act done with intent to deprive the defense of information." *State* v. *Williamson*, 212 Conn. 6, 16, 562 A.2d 470 (1989); *State* v. *Baldwin*, supra, 364. The defendant concedes that, in this case, the state never intended to deprive the defense of information because the defendant had not yet been arrested. The defendant urges us to find bad faith, however, where the exculpatory value of the evidence should have been known by the police. Under *Arizona* v. *Youngblood*, supra, 57 n., "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." The defendant must show, however, that "the police knew the semen samples would have exculpated him when they failed to perform certain tests [on the clothing] . . . ." Therefore, the defendant must show actual knowledge by the police of the definitive exculpatory nature of the evidence. "[T]his evidence was simply an avenue of investigation that might have led in any number of directions." Id. Therefore, the defendant's state due process right has not been violated.

---

[12] Having relied here on the principle that due process has the same meaning under both constitutions, we note, that we will adopt a federal standard of constitutional law when that standard "provide[s] no less individual protection than is guaranteed by Connecticut law." *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990); *Horton* v. *Meskill*, 172 Conn. 615, 641–42, 376 A.2d 359 (1977); *State* v. *Miller*, 29 Conn. App. 207, 222, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993). Here, the bad faith test may provide more protection to defendants than the four-prong test, even though the defendant urges us to apply the four-prong test. Without analyzing the two tests, it may be easier for the defendant to show bad faith than to show a deprivation of his due process right under the four-prong test.

### III

The defendant next asserts that he was deprived of his right to due process by the prosecution's use of evidence from a previous plea bargain that was withdrawn. We decline to afford review to this claim because it was not properly preserved before the trial court.

The following facts are necessary for a proper resolution of this issue. On December 17, 1991, the defendant entered an *Alford* plea of guilty to the charge of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2).[13] The terms of the plea bargain included a provision that the agreement could have been withdrawn if the defendant was known by an alias or had a criminal record. On January 17, 1992, the guilty pleas were vacated because the defendant was found to have used an alias, to have prior convictions, and that he was an escapee. On April 27, 1992, the trial court found the defendant guilty of sexual assault in the first degree, robbery in the first degree, and threatening. At the sentencing hearing, the prosecutor asked the court to consider the fact that "there was a change in plea in this matter. When he was first arraigned, he gave the name of Roberto Morales and date of birth and when he changed his plea, he also insisted his name was Roberto Morales. He was directly asked by the court, upon the suggestion of the state, to confirm his identity and his date of birth and they both turned out to be fictitious. That was, as I say, in response to direct questions by the court, so obviously Mr. Morales or Pena, is not particularly impressed by the authority of the court or the experience of being incarcerated." The defendant neither objected to this statement nor argued before the trial court the impro-

---

[13] See footnote 7.

priety of the statement. The defendant, however, requests that this court review the claim under *State* v. *Golding,* supra, and as plain error under Practice Book § 4185.

The defendant claims that Practice Book § 718[14] protects a constitutional right in prohibiting the use of the evidence of the change of plea at the sentencing hearing.

We conclude that the defendant cannot satisfy the second prong of *Golding,* since he has failed to demonstrate that his claim alleges a violation of a fundamental constitutional right. *State* v. *Golding,* supra. In the past, we have stated that "[r]obing garden variety claims of [impropriety] in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State* v. *Ulen,* 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). "A sentencing judge has very broad discretion in imposing any sentence within statutory limits. . . . The court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson,* 212 Conn. 31, 47, 561 A.2d 897 (1989). The right of due process is implicated only when the information to be considered lacks "some minimal indicium of reliability." Id. The information stated by the prosecutor was reliable. The circumstances surrounding the change of plea was a matter of record stated in a court proceeding.[15]

---

[14] Practice Book § 718 provides: "No evidence of the court proceedings at which a plea of guilty or nolo contendere was entered, where such plea is not accepted by the judicial authority or is later withdrawn pursuant to Sec. 719, shall be received at the trial of the case."

[15] Since we conclude that the defendant has not presented a constitutional claim, we do not reach the issue of whether Practice Book § 718 applies to sentencing hearings.

We also conclude that the use of the statements from the prior plea bargain is not entitled to plain error review. Practice Book § 4185. "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. . . . Such review is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Ulen,* supra, 37–38. "Having concluded that the [statement] of which the defendant now belatedly complains did not implicate his constitutional rights so as to warrant review under *State* v. *Golding,* supra, we find that the [prosecutor's statement] as given did not result in manifest injustice, and, therefore, does not permit plain error review." *State* v. *Ulen,* supra, 38.

The judgment is affirmed.

In this opinion the other judges concurred.