STATE OF CONNECTICUT *v.* OTIS JACKSON
(13172)

DUPONT, C. J., and LANDAU and HENNESSY, Js.

Argued February 6—decision released April 11, 1995

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Russell Zentner,* deputy assistant state's attorney, and, on the brief, *John T. Redway,* state's attorney, for the appellant (state).

*Richard F. Kelly,* public defender, for the appellee (defendant).

DUPONT, C. J. The issue presented in this appeal is whether the trial court improperly granted the defendant's motion to dismiss after the state refused to disclose the identity of the informant who had introduced an undercover police officer to a drug dealer, alleged to be the defendant. The informant was not present at the time of the criminal act alleged here. The court granted the state permission to appeal from the judgment of dismissal. We reverse the judgment of dismissal and remand the case for further proceedings.

The defendant was charged with violating General Statutes § 21a-278 (b).[1] He pleaded not guilty and elected a jury trial.

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds,

During jury selection, the state's attorney learned for the first time that the undercover police officer, who was going to testify as to the purchase of cocaine from the defendant, had been introduced to the defendant by a confidential informant. The state immediately informed defense counsel of the existence of the confidential informant.

The state then made an offer of proof of the underlying facts to show that disclosure of the informant's name was not required. The state indicated that the undercover police officer, less than one hour before attempting the undercover buy, reviewed at least eight photographs of known narcotics dealers, including a photograph of the defendant. The officer then went to an establishment known as Mac's Safari Cafe and met with a confidential informant. The informant introduced the officer to a person, allegedly the defendant, who, according to the informant, was a drug dealer. The informant told that person, "This is my cousin, take care of him," referring to the undercover agent.

The informant then walked away, leaving the officer with the drug dealer. After a few minutes, the dealer and the officer entered the men's room, and the officer purchased cocaine from the dealer. The officer left the bar shortly afterward and met with other officers at a prearranged location. Within one hour of the transaction, he looked at an array of photographs of similar looking individuals and identified the defendant as the person from whom he had purchased the

---

transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less ten years nor more than twenty-five years."

cocaine.[2] It is apparent from the record that no one except the undercover police officer and the confidential informant could offer eyewitness testimony on the issue of the identity of the individual.

The defendant had indicated throughout voir dire and continued to indicate during the course of the offer of proof that his claim at trial would be mistaken identity and that he had not been at Mac's Safari Cafe that night. No motions were made by the defendant or the state pursuant to Practice Book §§ 763 or 764 that the defendant would be presenting a defense of alibi.[3]

After the state's offer of proof, the defendant moved for disclosure of the identity of the confidential informant without any showing as to why disclosure was necessary. The state refused to disclose the informant's identity and maintained that it would not, and argued that any prejudice to the defendant resulting from nondisclosure of the informant could be remedied with a *Secondino*[4] charge. The court stated that disclosure of

[2] The defendant made no motion to suppress the identification of the defendant by the undercover agent, although he indicated during the course of the state's offer of proof that he intended to do so at a later time.

[3] Practice Book § 763 provides in relevant part: "Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file . . . a written notice of his intention to offer a defense of alibi."

Practice Book § 764 provides in relevant part: "If the written demand and notice have been filed pursuant to Sec. 763, the prosecuting authority . . . shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses."

[4] A *Secondino* charge, also known as "the missing witness rule," provides that the failure of a party to produce a witness who it is in his power to produce and who would naturally have been produced by him permits the inference that the evidence of the witness would be unfavorable to the party's cause. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–75, 165 A.2d 598 (1960).

As applied to this case, it would mean that the jury could draw an inference unfavorable to the state if the state failed to call the informant as a witness. See *United States* v. *Turbide*, 558 F.2d 1053, 1058 (2d Cir. 1977).

the name of the informant was absolutely required in cases where the defendant claims that he is a victim of mistaken identity, and the informant does something more than merely introduce the defendant. The court also asserted that the belated disclosure by the police regarding the involvement of the confidential informant prejudiced the defendant's preparation for trial. The court then granted the defendant's motion to dismiss the charge against him.

The state argues that the basis of the trial court's ruling was the court's improper view of the law, namely, that a claim of mistaken identity mandates the disclosure of a confidential informant's identity.[5] The state further argues that the burden was on the defendant to present facts in support of its request of disclosure, not on the state to present facts in support of its refusal to disclose, and that the court used an incorrect standard of proof to test the need for disclosure. The state also argues in the alternative that the trial court lacked discretion to dismiss the case without fur-

[5] The transcript reveals the following:

"[State's Attorney]: The state is going to oppose [the defendant's] request that we disclose the informant because I was going to represent that this informant did not negotiate the sale of the deal, did not hold the drugs, did not take the money, he just introduced them and they went to the bathroom.

"The Court: That's irrelevant.

"[State's Attorney]: The degree of participation, I would submit, is irrelevant, whether or not he participated in the transaction, but as far as Your Honor's other requests—

"The Court: Do you see the relevance? Do you see the relevance of the informant's testimony on the issue of identity?

"[State's Attorney]: It's relevant, Your Honor, but I don't think it mandates disclosure.

"The Court: It's crucial.

"[State's Attorney]: Because the undercover officer here—

"The Court: It's crucial to a determination of the, number one, of the fairness of the identification procedure, the accuracy, the reliability of it. Number two, it's mandated under the sixth amendment, fundamental fairness."

ther inquiry into the facts and applicable law. The defendant counters that the trial court correctly ordered the state to disclose the informant's identity as a matter of fundamental fairness, in light of the unexpected disclosure of the existence of the informant and in light of the defendant's claim of mistaken identity. We agree with the state.

The state directs us to several federal cases as well as to cases from other states to support its argument that disclosure is not necessary in a case such as this one, where the informant arguably did more than merely introduce the defendant, but did not witness or actually participate in the crime. Because, however, we hold that the trial court did not conduct an appropriate balancing test under *Roviaro* v. *United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957); we need not determine whether the facts of this case would require disclosure.

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Id., 59. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Id.

One limitation on this privilege arises from "the fundamental requirements of fairness. Where the disclosure of an informant's identity . . . is relevant and helpful to the *defense* of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require dis-

closure and, if the Government withholds the information, dismiss the action." (Emphasis added.) Id., 60–61. Thus, when disclosure is required, it is not because of any police misbehavior that must be the subject of a sanction.

There is "no fixed rule with respect to disclosure . . . . The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his *defense*. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible *defenses*, the possible significance of the informer's testimony, and other relevant factors." (Emphasis added.) Id., 62.

"Under the *Roviaro* balancing test, case law has delineated the extent to which disclosure '*might* have been helpful to the defense.' . . . Before a court will compel disclosure, the informant typically must be a participant in the alleged crime or an eyewitness thereto." (Citations omitted; emphasis in original.) *State* v. *Lee*, 30 Conn. App. 470, 479, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 533 (1994). If the informant, in addition to being a participant or an observer of the crime, claims that the defendant was not the person involved in the crime, disclosure is, of course, all the more necessary. *Roviaro* v. *United States, supra*, 353 U.S. 64–65. "By contrast, courts generally agree that if the informant provides information to law enforcement officers without any further involvement, disclosure must yield to the protection of the informant." *State* v. *Lee, supra*, 479. In cases in which the defendant has distinctly invoked the defense of entrapment, or where the testimony of the informant might show entrapment, disclosure is favored. *Roviaro* v. *United States, supra*, 64; *State* v. *Lee, supra*, 480. However, "[m]ere speculation that the informant's infor-

mation will be helpful to the defense is not sufficient to mandate disclosure . . . ." *State* v. *Richardson*, 204 Conn. 654, 663, 529 A.2d 1236 (1987); see also *State* v. *Harris*, 159 Conn. 521, 529, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 (1971). "The defendant bears the burden of demonstrating the need for disclosure of an informer's identity." *State* v. *West*, 178 Conn. 444, 446, 423 A.2d 117 (1979).

The transcript of the proceedings in the trial court indicates that the trial court did not perform the required *Roviaro* balancing test, which requires an analysis of both the defendant's need for disclosure of the identity of the informant and the state's need to protect the informant from disclosure.[6] The court here did not consider the state's interest in keeping the informant's identity confidential. Furthermore, although the defendant reiterated his claim of mistaken identity, he made no showing as to the necessity of the disclosure of the informant's identity. He had not filed a motion to suppress, or a notice of intent to present an alibi

---

[6] The court's articulation as to the reasons for granting the motion to dismiss is as follows: "[Defense counsel] has said that via motion to suppress he would seek to explore the reliability of this particular identification, that that question is, the answer to that question is, quote, so intertwined with the testimony of the informant that it cannot be separated. It's very likely that there was a mistaken identity on the part of the informant that could be transferred to the police officer. I mean, it's easy to see how that could happen . . . . You know, the scenario that I set out is a very, is a very likely one. What if the informant was dealing with someone they thought was Mr. Otis Jackson? And that happens all the time in everyday life, people think they're talking to someone but they're talking to a brother or a cousin or a relative. Who knows? We'll never know. It's all speculating on our part because we can't get to that testimony . . . this is different than a case where an informant makes a mere introduction . . . . The single issue in this case is one of identity and has been since day one . . . and I couldn't think of anybody with more crucial, more reliable testimony on that point, of whether this is a person that was in the bar, than the informant. He knew the person he was dealing with supposedly better than the police officer."

defense or any other affirmative defense that would require him to make a showing as to the identity issue. Identity is always an issue in any criminal case, and "the burden [is always] on the prosecution to prove the element of identification beyond a reasonable doubt." *State* v. *Tatum,* 219 Conn. 721, 734, 595 A.2d 322 (1991). Here, the state's attempt to prove identity would be weakened by its failure to call the informant as a witness. The defendant cannot demand disclosure on the basis that the informer is a " 'key witness for the prosecution.' " *State* v. *Harris,* supra, 159 Conn. 529.

Disclosure is not mandatory when a claim of mistaken identity is made. In this case, if the defendant had claimed he intended to present an affirmative defense such as entrapment, and had made a showing of the necessity of the disclosure of the informant's identity to that defense, the balancing test of *Roviaro,* had it been conducted, might have made disclosure necessary. Defenses such as entrapment, unlike claims of mistaken identity, often require evidence of events occurring prior to the crime in which the informant may have participated. *State* v. *Lee,* supra, 30 Conn. App. 477–79. Claims of mistaken identity, in contrast, usually concern only the events of the crime itself and relate to whether the defendant was in fact the perpetrator. Identity of a defendant as the one who committed the crime is an element common to proof of all crimes, which the state must prove beyond a reasonable doubt.

Although *Roviaro* does authorize a trial court to dismiss a case where the court, after balancing the competing interests, deems disclosure necessary and the state still refuses to disclose, that authority exists only *after* the balancing test has been performed. *Roviaro* v. *United States,* supra, 353 U.S. 60–61. The defendant here, however, simply made a claim of mistaken identity and did not show any need for disclosure

because of a preparation of a defense. Further, the court inappropriately placed the burden on the state to show how disclosure was not required in this particular case.

While there are no published cases in Connecticut that involve the exact circumstances of this case, Connecticut courts have held in other circumstances involving motions to dismiss in criminal cases that "this difficult and delicate process necessarily involves a careful consideration by the court of myriad factors that underlie a judgment regarding fundamental fairness." *State* v. *Dills*, 19 Conn. App. 495, 504, 563 A.2d 733 (1989). A further inquiry into the application of *Roviaro* to the facts of this case is necessary before a dismissal of this case would be warranted.

The judgment is reversed and the case is remanded for a *Roviaro* hearing.

In this opinion the other judges concurred.