STATE OF CONNECTICUT *v.* JAMES DARDEN
(14010)

O'Connell, Heiman and Hennessy, Js.

Argued September 12—decision released November 7, 1995

*Jeremiah Donovan*, special public defender, for the appellant (defendant).

*Lawrence J. Tytla*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (4) and one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 and 53a-48 (a).

The defendant's first three claims are based on his contention that the state improperly destroyed potentially exculpatory evidence.[1] Additionally, the defendant argues that the trial court abused its discretion in permitting testimony that the defendant was a lieutenant in a criminal gang. We reverse the judgment and remand the case for a new trial.

The jury could reasonably have found the following facts. The defendant and the victim, James Douglas, were both inmates at the J. B. Gates Correctional Unit in Niantic. The defendant, a lieutenant in a gang, planned the stabbing and beating of the victim. In order to carry out that plan, the defendant enlisted inmate Larry Henry to lure the victim to a cubicle[2] where the defendant was waiting with inmates Jerome Ely and Clarence Bridgeforth. When the victim entered the defendant's cubicle, Ely held him while Bridgeforth and the defendant stabbed him repeatedly with shanks.[3]

After some delay, the victim disclosed to prison authorities that he had been injured. He was eventually taken to a hospital where he was treated for injuries resulting from the attack, including multiple stab wounds and a collapsed lung. The victim identified the defendant as one of his assailants.

Shortly after the assault, but before it had been reported to correction officials, a correction officer

---

[1] The defendant's first three claims were as follows: (1) This court should reconsider and reverse our decision in State v. Morales, 33 Conn. App. 184, 634 A.2d 1193 (1993); (2) the trial court improperly failed to find that destruction of potentially useful evidence violated the defendant's due process rights under the state and federal constitutions; and (3) the trial court improperly failed to charge the jury that it could draw an adverse inference from the destruction of potentially useful evidence.

[2] A cubicle refers to the space in which a prisoner is housed. In this case, the dormitory where the assault took place housed 112 inmates divided among numerous cubicles separated by walls approximately four feet tall. Four inmates were assigned to each even numbered cubicle and nine were assigned to each odd numbered cubicle.

[3] A shank is a homemade knife.

made a routine shakedown of the dormitory while the inmates were at dinner. In the cubicle next to the defendant's, the officer found a paper bag containing two shanks and a piece of damp terry cloth concealed in the sleeve of a jacket. The officer turned over the items to his supervisor. The shanks were identified as the weapons used to stab the victim.

The shanks and the paper bag in which they had been found were destroyed. The supervisor discarded the paper bag because he did not believe that it had evidentiary value. The shanks were destroyed in compliance with a court order following judicial disposition of a codefendant's case. Additional facts are included in our analysis of the issues.

I

The defendant first contends that he was deprived of due process of law under article first, § 8, of the Connecticut constitution[4] because the police failed to preserve potentially exculpatory evidence.

Prior to 1988, Connecticut had applied a balancing test to determine whether the failure of police to preserve potentially useful evidence had deprived a defendant of due process of law under either the federal or our state constitution. *State* v. *Asherman,* 193 Conn. 695, 723–24, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Under the *Asherman* test, trial courts were required to weigh four factors in making that determination: (1) the materiality of the missing evidence; (2) the likelihood of mistaken interpretation of it by witnesses or the jury; (3) the reason for its unavailability to the defense; and (4) the prejudice to the defendant caused by the unavailability of the evidence. Id.

---

[4] Article first, § 8, of the Connecticut constitution provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

In 1988, the United States Supreme Court ruled that under the federal constitution, a defendant need prove only that the police acted in bad faith in order to establish a denial of due process. *Arizona* v. *Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Following the *Youngblood* decision, this court concluded that the federal standard enunciated in *Youngblood* was applicable to due process challenges of destruction of evidence under the state constitution. *State* v. *Morales*, 33 Conn. App. 184, 634 A.2d 1193 (1993).

In 1995, however, our state Supreme Court reversed this court's decision in *State* v. *Morales*, supra, 33 Conn. App. 184, holding that the bad faith test was not appropriate for due process challenges under the state constitution. *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995). In that case, the Supreme Court determined, on a due process claim raised under the Connecticut constitution, that bad faith of the police in failing to preserve potentially useful evidence was not in itself dispositive. Id., 726–27. Rather, in determining whether a criminal defendant has been afforded due process of law under the state constitution, the trial court must employ the four prong balancing test first enunciated in *Asherman*. Id.[5]

The timing of the two *Morales* decisions in relation to the present appeal is significant. The defendant's case was tried in 1994, when the *Youngblood* bad faith test had been stated to be Connecticut law pursuant to this court's decision in *State* v. *Morales*, supra, 33 Conn. App. 184. Despite the fact that *State* v. *Morales*, supra, 184, had been decided at the time that the defendant took his appeal,[6] he nonetheless urged us in his brief

[5] As a result of the remand in *State* v. *Morales*, supra, 232 Conn. 707, this court has recently decided *State* v. *Morales*, 39 Conn. App. 617, 667 A.2d 68 (1995). Although *State* v. *Morales*, supra, 39 Conn. App. 617, discusses the principles that are currently before us, that decision does not affect our analysis of the present case.

[6] The Supreme Court decision in *State* v. *Morales*, 232 Conn. 707, was pending when the defendant took his appeal to this court in the present case.

to reconsider that decision and to find the *Asherman* test applicable to determine if the destruction of potentially useful evidence infringes on a defendant's due process rights under the state constitution. Such reconsideration became unnecessary when, prior to the scheduled hearing before this court, the Supreme Court decided *State* v. *Morales*, supra, 232 Conn. 707, thereby reinstating the *Asherman* test.

Because *State* v. *Morales*, supra, 232 Conn. 707, was not decided until after the trial in the present case, the trial court had not conducted the balancing test with respect to the shanks and the paper bag as required by *Asherman.* Although the trial court was not at fault, the failure to perform the *Asherman* balancing test violated the defendant's due process guarantee under the state constitution. It is clear that his conviction must be vacated.

*State* v. *Morales*, supra, 232 Conn. 707, however, did not dictate a per se result as a consequence of the failure to perform the *Asherman* test, but rather recognized that the disposition of each case will vary according to individual circumstances. Id., 728–29. The circumstances of the present case suggest four possible dispositions: (1) dismissal of the charges; (2) performance of the *Asherman* test by this court; (3) performance of the *Asherman* test by the trial court; or (4) a new trial.

The first alternative, dismissal of the charges, is too drastic under the circumstances. Without a record of a ruling based on the four factors of *Asherman,* we have no way of determining whether the defendant was prejudiced. We therefore decline to dismiss the case. The second alternative, performance of the balancing test by this court, would require us to make factual findings, and it is axiomatic that making findings of fact is not within the province of appellate tribunals. See *New Haven* v. *Local 884, Council 4, AFSCME, AFL-*

*CIO*, 38 Conn. App. 709, 713, 662 A.2d 818 (1995). The third alternative, ordering the trial court to conduct the balancing test now, is also inappropriate. Because this court had declared that the *Asherman* test was not the law at the time of trial, it is unlikely that the parties developed the evidence in such a manner as to allow the trial judge to conduct an informed balancing at this stage of the proceedings. Only the fourth alternative, a new trial, will allow the parties to develop the evidence so that the trial court may properly apply the *Asherman* balancing test.

Accordingly, the defendant is entitled to a new trial at which the court may properly consider the defendant's claim under the Connecticut constitution.

## II

The second and third issues are subsumed in our analysis of the first issue and require no further discussion.

## III

Despite our remand for a new trial, we discuss the defendant's fourth claim because it may arise on retrial. The defendant claims that the trial court abused its discretion in permitting two witnesses to testify that the defendant was a lieutenant in a criminal gang known as Punk Nation.

Inmates Ely and Henry testified to the effect that they each participated in the assault because the defendant ordered them to do so. The inmates, also gang members, testified that the defendant's orders carried significant weight because the defendant held a position of rank in the gang. Ely testified that his reason for participating in the assault was so that he would be permitted to quit the gang without being beaten. He further testified that he believed that the defendant held the rank of lieutenant or captain in the gang.

The defendant argues that any probative value of this evidence is outweighed by its prejudice to the defendant. Probative evidence, although in some respects prejudicial, "is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." *State* v. *Ramsunder*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987).

The trial court has broad discretion in determining whether the probative value of proffered evidence is outweighed by the prejudice that is likely to result from its admission. *State* v. *Prioleau*, 235 Conn. 274, 315, 664 A.2d 743 (1995). We will reverse the trial court only where it has been demonstrated to this court that the trial court abused its discretion. *State* v. *Brown*, 169 Conn. 692, 702, 364 A.2d 186 (1975).

The evidence that the defendant was a gang member of rank was highly probative because it served to explain why Ely and Bridgeforth participated in the attack on the victim. Gang affiliation, common among all the inmates who joined in the assault, was also important to negate the defendant's assertion that he was in no way connected to the incident. We cannot agree that in this case the probative value of such evidence is clearly outweighed by its prejudicial impact. Under the circumstances of the present case, we conclude that the trial court did not abuse its discretion by admitting evidence that the defendant was a lieutenant in a criminal gang.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.