## STATE OF CONNECTICUT *v.* ALLAN LYLE
### (13283)

O'Connell, Foti and Schaller, Js.

Argued November 28, 1995—decision released February 6, 1996

*Brian J. Kornbrath*, with whom, on the brief, were *Patricia A. DeJuneas* and *Susan G. Wasserman*, legal interns, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *James Bernardi*, senior assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of one count of sale of narcotics in violation of General Statutes § 21a-277 (a).[1] The defendant claims that the trial court (1) misinstructed the jury on identification, and (2) failed to instruct the jury that it could draw an adverse inference from the state's intentional destruction of physical evidence. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. Officer William Chase of the Bridgeport police department was assigned to the statewide narcotics task force (task force) as an undercover agent. On the evening of October 17, 1988, Officer Brian McElligott of the Stamford police department instructed Chase to make a controlled drug buy from a person known as "Jamaican Wayne." Chase entered the Dunright Bar

---

[1] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . sells . . . to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

and asked a patron to identify "Jamaican Wayne." The patron pointed to the defendant. Chase approached the defendant and proceeded with the controlled buy. In the men's room of the bar, Chase took a $20 bill, the serial number of which had been recorded, out of his pocket while the defendant took a plastic bag from his coat. Chase held the bill out to the defendant, who in turn placed an amount of white powder on the bill. Chase paid the defendant $70 of task force funds.

After completing the transaction, Chase left the bar and gave both the white powder and the $20 bill to McElligott. A field test of the substance revealed the presence of cocaine. The state toxicology laboratory confirmed the presence of cocaine in the white powder two weeks later, but the $20 bill was never tested for trace amounts of cocaine. The laboratory returned the cocaine to McElligott, who put the bill and the cocaine into the task force evidence safe. On October 31, 1988, McElligott removed the $20 bill from the evidence safe and put it back into task force funds. The bill has since been circulated and was not available for testing by the defendant or for use by either party at trial.

I

The defendant raises a two part challenge to the court's jury instructions on identity. First, he claims that the court failed to instruct on identity in conjunction with the other elements. Second, he claims that the court diluted the state's burden by instructing the jury that it need only find the defendant "involved with" the crime beyond a reasonable doubt in order to find that the defendant sold drugs to Chase.

It is elementary that each element of a crime, including identity, must be proved by the state beyond a reasonable doubt. *State* v. *Tatum*, 219 Conn. 721, 734, 595 A.2d 322 (1991); *State* v. *Jackson*, 37 Conn. App. 491, 499, 656 A.2d 1056 (1995). The primary purpose of a

jury charge is to assist the jury in applying the law correctly to the facts that it finds to be established. *State* v. *Taylor*, 37 Conn. App. 464, 469, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995). In reviewing a constitutionally based challenge to a court's jury instruction on an element of a crime, we must determine whether it is reasonably possible that the jury was misled. *State* v. *Quintana*, 209 Conn. 34, 50, 547 A.2d 534 (1988); *State* v. *Cardany*, 35 Conn. App. 728, 737, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994).

"It is axiomatic that in reviewing a challenged portion of a jury charge, we must consider the charge as a whole and its effect in guiding the jury to a proper verdict. . . . We do not scrutinize an individual section of an instruction in artificial isolation from the overall charge in a microscopic search for possible error." (Citation omitted; internal quotation marks omitted.) *State* v. *Edwards*, 39 Conn. App. 242, 248–49, 665 A.2d 611, cert. denied, 235 Conn. 924, 666 A.2d 1186 (1995).

Before instructing on the elements of the sale of narcotics, the trial court delivered general instructions. As part of the general instructions, the court explicitly told the jury that "[o]ne of [the] elements, of course, is the identification of the accused as the person who committed the crime." Later in the general charge, the trial court repeated that the jury was to determine "ultimately that this crime was committed by the defendant beyond a reasonable doubt."

The essence of the defendant's claim is that the trial court improperly instructed on identity when, on a single occasion in the general portion of the charge, it instructed the jury as follows: "It's necessary that you find that [the defendant] is the person that *was involved*, and whatever you would find him *involved with* on that particular day, [you must find him involved] beyond a

reasonable doubt." (Emphasis added.) The defendant contends that the court's use of the words "involved with" lessened the state's burden to prove identity, thereby allowing it to prove that the defendant was merely involved in the crime instead of the person who actually committed it. We are not persuaded.

The phrase the defendant challenges as improper was surrounded by the court's explicit instructions that the state was required to prove beyond a reasonable doubt that the defendant was the person who committed the crime. Because our task is not to isolate individual words, but rather to examine them in the context of the entire charge, we conclude that the trial court properly instructed the jury on identity both before and after the single use of the phrase "involved with." Upon examination of the instructions in their entirety, we cannot conclude that there is a reasonable possibility that the challenged instruction misled the jury as to the state's burden of proving identity beyond a reasonable doubt.

II

The defendant next claims that the trial court failed to instruct the jury that it could draw an adverse inference from the state's intentional destruction of the $20 bill as evidence. The defendant contends that had he been able to test the bill and had the test failed to reveal cocaine residue, those results could have been used to impeach Chase's testimony. We do not agree.

Although an adverse inference instruction may be appropriate under certain circumstances, a trial court is not required to give an adverse inference instruction in every case involving missing evidence. *State* v. *Mullings*, 202 Conn. 1, 17, 519 A.2d 58 (1987). The defendant correctly states that, in order to prevail on appeal, he must show both that the trial court abused its discretion in refusing to give the adverse inference instruction on the recirculated $20 bill and that it was more probable

than not that the failure to give the requested instruction affected the result of the trial. *State* v. *Vilalastra*, 207 Conn. 35, 47, 540 A.2d 42 (1988).[2]

The defendant argues that he was entitled to an adverse inference instruction on the missing bill to undercut the testimony of Chase, who stated that "Jamaican Wayne" placed the white powder inside the $20 bill. In support of that argument, the defendant contends that had the bill been available for testing and had the test revealed the absence of trace amounts of cocaine, those results would have impeached Chase's version of the controlled buy. The defendant claims that the instruction was necessary to permit the jury to infer that "perhaps, the controlled buy did not take place as Chase testified," thereby also permitting it to question Chase's identification of the defendant as the person who sold him drugs.

"The failure to produce [evidence] for trial [that] is available and [that] a party would naturally be expected to [produce] warrants an adverse inference instruction against the party who would be expected to [produce that evidence]. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–75, 165 A.2d 598 (1960). In such a situation there is a logical nexus between the failure to [produce the evidence] and an adverse inference. In other words, it makes sense to infer that the [evidence], had [it been] available . . . would [have been] adverse to the party who would naturally be expected to [produce] that [evidence] but failed to do so. *State* v. *San-*

[2] After submission of briefs but before oral argument, this court released *State* v. *Darden*, 39 Conn. App. 645, 666 A.2d 831 (1995). In *Darden*, we held that, under the circumstances of that case, a new trial was necessary so that the trial court could consider the defendant's due process claim under the Connecticut constitution. Id., 650. Although the defendant, in accordance with Practice Book § 4071A, notified this court and the state of his intention to rely on *Darden* at oral argument, he failed to characterize his claim as constitutional in nature. We therefore need not determine *Darden*'s applicability to this case.

*tangelo*, 205 Conn. 578, 596, 534 A.2d 1175 (1987)."
(Internal quotation marks omitted.) *State* v. *Figueroa*,
235 Conn. 145, 174, 665 A.2d 63 (1995).

In the present case, there is no logical nexus between the state's failure to produce the $20 bill and the inference that, had the bill been tested and revealed an absence of cocaine, such results would have impeached Chase's identification testimony. The identification of the person who sold the drugs to Chase was the central issue in this case. See part I of this opinion. Although the defendant pursued a mistaken identification defense at trial, Chase testified that *the defendant* sold him the cocaine. The presence of the bill, with or without the cocaine residue, would not have diminished Chase's direct identification of the defendant. There is, therefore, no logical connection between the state's failure to produce the bill and Chase's positive identification of the defendant as the person who sold him the cocaine.

We conclude that it is not reasonably probable that the jury would have found Chase to be an unreliable witness had the bill been produced and shown to lack trace amounts of cocaine. Because the defendant has not demonstrated that the failure to give the requested adverse instruction affected the verdict, we cannot conclude that the refusal to give the instruction constituted an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.